Exhibit A

**HELTON LAW GROUP**
A PROFESSIONAL CORPORATION
YVETTE KOHAN (State Bar No. 220268)
MEGAN EILERS (State Bar No. 328505)
ATTORNEYS AT LAW
1590 Corporate Drive
Costa Mesa, ca 92626
TELEPHONE: (562) 901-4499
FACSIMILE: (562) 901-4488

ATTORNEYS FOR PLAINTIFF LOS ALAMITOS MEDICAL CENTER

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF ORANGE**

| | |
|---|---|
| LOS ALAMITOS MEDICAL CENTER,<br><br>Plaintiff,<br><br>v.<br><br>ELAP SERVICES, LLC, a Delaware limited liability company; GROUP & PENSION ADMINISTRATORS, INC., a Texas corporation; NEWEGG, INC., a California corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No: 30-2020-01164495-CU-BC-CJC<br><br>ASSIGNED TO: Judge Derek W. Hunt<br>DEPT.:<br><br>UNLIMITED – DAMAGES EXCEED $25,000<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>1. **BREACH OF IMPLIED IN FACT CONTRACT**<br>2. **QUANTUM MERUIT** |

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

1.  Defendants ELAP SERVICES, LLC, a Delaware limited liability company, GROUP & PENSION ADMINISTRATORS, INC., a Texas corporation, NEWEGG, INC., a California corporation and DOES 1 through 25, inclusive (each a "Defendant" and collectively, the "Defendants"), have failed to pay more than $51,358.31 in medical reimbursement owed to Plaintiff LOS ALAMITOS MEDICAL CENTER, for medically necessary hospital care and services provided to one (1) patient.

1
COMPLAINT

## THE PARTIES

2. Plaintiff, LOS ALAMITOS MEDICAL CENTER ("Plaintiff" or "Hospital"), is and at all relevant times a California corporation, organized and existing under the laws of the State of California. Hospital is and at all relevant times in good standing and qualified to do business under the laws of the State of California. At all relevant times, the Hospital had no contract with Defendants.

3. Plaintiff is informed and believes and thereon alleges that Defendant NEWEGG, INC. ("Newegg") is and at all relevant times was a Delaware Corporation, registered as a foreign entity under the laws of the State of California with its principal place of business in the City of Industry, California. The Hospitals are informed and believe and thereon allege that Newegg sponsors and operates a welfare benefit plan that pays for healthcare services provided by medical providers to their policy holders and their dependents. The Hospitals are informed and believe and thereon allege that Newegg is registered in the State of California as a foreign limited corporation and is thereby subject to the laws and regulations of the State of California

4. Hospital is informed and believes and thereon alleges that Defendant GROUP & PENSION ADMINISTRATORS, INC. ("GPA") is and at all relevant times was a corporation organized and existing under the laws of the State of Texas, with its principal place of business in the City of Dallas, County of Dallas, in the State of Texas. Hospital is informed and believes that GPA provides health care benefit administration to Newegg enrollees and their beneficiaries.

5. Hospital is informed and believes and thereon alleges that Defendant ELAP SERVICES, LLC ("ELAP") is and at all relevant times was a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the City of Wayne, County of Chester, in the State of Pennsylvania. Hospital is informed and believes that ELAP provides health care claim appeal administration as a designated decision maker and fiduciary to Newegg enrollees and their beneficiaries.

6. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 25, inclusive, are unknown to the Hospital, which therefore sues said defendants by such fictitious names. The Hospital is informed and thereon alleges that each of the defendants designated herein as a DOE is legally responsible in some manner of the events and

happenings referred to herein and legally caused injury and damages proximately thereby to the Hospital. When their true names and capacities are ascertained, Hospital will seek leave of this Court to amend this Complaint to insert their true names and capacities in place of the fictious names.

7. Defendants ELAP, GPA, Newegg and DOES 1 through 25 are collectively referred to herein as "Defendant" and/or "Defendants."

## JURISDICTION

8. Jurisdiction is proper in this judicial district because this is where the implied-in-fact contract was entered into and/or where the breach of the implied-in-fact contract occurred and where the health care services were provided to the Patient.

## AGENCY

9. Hospital is informed and believes and thereon alleges Defendant Newegg has entered into administrative service agreements or other contracts with Defendants GPA and ELAP to act as the agents for Defendant Newegg, and has provided GPA and/or ELAP actual or ostensible authority to act on Defendant Newegg's behalf for: communicating with policyholders and medical providers, such as the Hospital; creating agreements with medical providers so that Defendant Newegg's policyholders may receive medical services; verifying member policy information and eligibility to medical providers, such as Hospital, interpreting plan terms and provisions; authorizing services to be provide by the Hospital to Defendant Newegg's policyholders; determining medical necessity and coverage of services; receiving the Hospital's claims; processing and administering the Hospital's claims and appeals; approving or denying the Hospital's claims and appeals; interpreting policy documents; determining whether and how to pay the Hospital's claims; issuing payment advice; claim status reports and explanation of benefits ("EOBs"), and making and administering payments.

10. Hospital is informed and believes and thereon alleges at all times mentioned herein, each of the Defendants, including all Defendants sued under fictitious names, were the agents and/or employee of each of the remaining Defendants, and in so doing the things alleged herein, were acting within the scope of his or her agency and employment.

11. With respect to the claim at issue in this case, Hospital dealt directly with GPA and/or ELAP in obtaining agreements to pay for services, seeking authorization for the services, obtaining

eligibility and coverage information, submitting claims for reimbursement, communicating about the claims, appealing the denial or underpayment of the claim, submitting additional information concerning the claim, and receiving payments from GPA and/or ELAP.

## BACKGROUND

12. Hospital is informed and believes, and thereon alleges, on the date of service during which the Hospital provided health care services to the Patient, that such patient was an enrollee of the Newegg's health benefit plan.

13. The claim asserted in this Complaint are based upon the individual and proper rights of the Hospital in its own individual capacity and is not derivative of the contractual or other rights of Newegg's policyholders. The claim asserted in this Complaint arise out of the Hospital's interactions with Newegg, GPA, ELAP, and DOES 1 through 25, inclusive, and is derived from the representations and warranties made during those communications. The Hospital does not in any way seek to enforce the contractual rights of Newegg's policyholders through the policyholder's insurance contract, policies, certificates or coverage, or other written insurance agreements.

## GENERAL ALLEGATIONS

14. As required by the laws of the State of California, at all times relevant herein, the Hospital was required to, and in fact did, publish its charges online on the Office of Statewide Health Planning and Development ("OSHPD") website. Hospital's published charges are, and were at all times relevant here, available to the public including Defendants. Hospital's published charges reflect the reasonable and customary value of the services and supplies Hospital provides.

15. It is a custom and practice in the healthcare industry for health care providers such as Hospital and health plans such as Defendants to enter into written contracts wherein the plans agree to encourage their members to use Hospital for their medical needs, and in exchange Hospital agrees to accept payment at a discount off the full charge of its rates as published online on the OSHPD website.

16. It is a custom and practice in the healthcare industry that where Hospital and a health plan have not entered into a valid written contract, no other rate is set by law, and when said Hospital treats a member of said health plan, the health plan will pay the facility's full billed charges, which are

published online on the OSHPD website, as said charges are the reasonable and customary rate for said services.

17. Hospital is informed and believes that, at all relevant times, Defendants have known about Hospital's full billed charges. The Hospital is informed and believes that, at all relevant times, Defendants were also aware that, in the absence of a contract, letter of agreement or rate set by law, the Hospital expects reimbursement from a health plan at the facility's full billed charges.

18. Based on custom and practice, Hospital possessed all customary paperwork available upon the Patient's admission, which included the Conditions of Services Agreement. The Conditions of Services Agreement provides that Patient agrees "to promptly pay all Hospital bills in accordance with the regular rates and terms of the Hospital…" and the Patient is "financially responsible for charges not paid according to…" all insurance and plan benefits. The Patient executed and entered into the Conditions of Services Agreement ("Patient Contract").

19. Hospital submitted to Defendants claims for reimbursement for the services the Hospital provided to the Patient. Defendants acknowledged their obligation to pay Hospital for medical services provided to the Patient through correspondence and discussions, including but not limited to issuing partial payments for the services rendered.

20. Defendants have underpaid, failed to identify amounts as patient responsibility, and/or delayed payment for amounts owed to Hospital for medically necessary services provided to Patient.

21. The Hospital submitted letters to Defendants disputing the underpayment.

22. Taking into account Defendants' partial payments and Patient's payments of copays, etc., Defendants currently owe the Hospital $51,358.31 for the medically necessary services provided to one (1) Patient.

### SPECIFIC ALLEGATIONS AS TO PATIENT 1

23. Hospital is informed and believes and thereon alleges that Patient 1[1] is and at all relevant times was, a policyholder of the welfare benefit plan sponsored and operated by Newegg.

24. On August 24, 2018, Patient 1 presented to Hospital for an elective, outpatient surgery.

---

[1] The patient's name and other protected health information have been excluded to protect his or her privacy. The Hospital will provide Defendants with such information upon request.

5
COMPLAINT

25. On August 23, 2018, the Hospital used an automated system, operated by Defendant GPA and/or its agents, to determine Patient 1's eligibility to receive benefits.

26. On August 24, 2018, the Hospital placed a call to Defendant GPA and spoke with their representative, identified as Debbie W., who verified to Hospital that an authorization for Patient's pending services was not required.

27. No contract would determine the reimbursement rate for the Hospital services exists between the Hospital and Defendants. As such, Defendants agreed to pay for the hospital services to be rendered to Patient 1 at the Hospital's usual and customary ("UC") rate, which is up to one hundred percent of the Hospital's full billed charges.

28. Hospital provided medically necessary services to Patient 1 until the time of their discharge. Due to the nature of outpatient surgery, discharge occurred the same day as Patient's presentation: August 24, 2018. The billed charges for the services rendered to Patient 1 total: $57,642.53.

29. Hospital timely billed for the medical services rendered to Patient 1. The Hospital is informed and believes and thereon alleges that Defendants knew that Hospital was expecting to be reimbursed at its UC rate for the hospital services provided.

30. Defendants and/or their agents paid the Hospital in the amount of $6,034.22. Defendants and/or their agents also issued an EOB indicating that Patient 1 was responsible for paying $250.00 to the Hospital in co-insurance.

31. Defendants and/or its agents failed to fully reimburse the Hospital for the services provided to Patient 1. With Defendants' partial payment of $6,034.22, Patient's co-insurance of $250.00, Defendants still owe the Hospital $51,358.31 for the medically necessary services provided to Patient 1.

**FIRST CAUSE OF ACTION**

**BREACH OF IMPLIED-IN-FACT CONTRACT**

**(AGAINST ALL DEFENDANTS)**

The Hospital hereby re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs above, and further alleges as follows.

32. Prior to and/or at the time of providing services to the Patient, Hospital contacted Defendants to verify Patient's eligibility and benefits and/or request authorization for the services the Hospital provided to Patient. Defendants verified the Patient's eligibility and benefits and provided unequivocal confirmation pre-authorization for the services Patient would receive was not required.

33. Defendants did not assert that the Patient was not their insured or indicate in any way to the Hospital that they would not cover the Patient's medical expenses.

34. Hospital reasonably understood the actions and communications by Defendants to constitute express and/or implied requests that the Hospital provide services to the Patient and an agreement by Defendants and/or their agents to pay the Hospital for such requested services.

35. Defendants' conduct gave rise to implied-in-fact agreements between the Hospital and Defendants obligating Defendants and/or their agents to pay for the care and treatment rendered by the Hospital to the Patient.

36. Hospital performed all its obligations under its implied-in-fact contract with Defendants in that it cared for and treat the Patient to the best of the Hospital's abilities.

37. Hospital timely submitted to Defendants and/or their agents claims for reimbursement for the services provided to the Patient.

38. Defendants acknowledged their contractual obligations to the Hospital by issuing partial payment on such claims or through correspondence and communications. However, Defendants failed to fully reimburse the Hospital for the services rendered to the Patient.

39. Defendants thus breached their implied-in-fact agreement with the Hospital. As a result, the Hospital has been damaged in an amount not less than $51,358.31.

**SECOND CAUSE OF ACTION**

**QUANTUM MERUIT**

**(AGAINST ALL DEFENDANTS)**

Hospital hereby re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs above, and further alleges as follows.

40. As alleged above, the Hospital believes it is entitled to full and complete payment from Defendants in accordance with the implied-in-fact contracts as set forth above. However, to the extent

the implied-in-fact contracts alleged do not apply and/or are deemed unenforceable against the Defendants for any services at issue, the Hospital alleges in the alternative that Defendants owe the Hospital for these services based on *quantum meruit*.

41. The Hospital rendered hospital services to the Patient, who, the Hospital is informed and believe and thereon alleges, is and at all relevant times was a policyholder of Defendant Newegg's welfare benefit plan, at the specific request of Defendants. Defendants knew those services were being provided to the Patient. Defendants specifically verified the Patient's eligibility to receive hospital services and confirmed pre-authorization would not be required for such services to be rendered. Defendants consented to and accepted the hospital services provided by the Hospital to Patient. Defendants were aware that, by verifying the Patient's benefits and confirming that pre-authorization would not be required, the Hospital would rely on those actions and then render hospital services to the Patient. Moreover, Defendants were aware that no contract existed between the Hospital and the Defendants that would provide a discount for the Hospital services. Thus, Defendants were aware that it would be required to reimburse the Hospital at the Hospital's UC rate, or up to one hundred percent of Hospital's full billed charges.

42. After verifying the Patient's benefits and confirming no pre-authorization was required, the Hospital provided medically necessary hospital services to the Patient, thereby benefitting the Defendants. Defendants have failed and refuse to fully pay the Hospital for the hospital services provided to the Patient.

43. The *quantum meruit* amount owed by Defendants to Hospital is determined according to the customary charges that would be billed by the Hospital in the absence of preferred provider or participating provider contractual rates. Based upon Defendants' verification of the Patient's benefits and by confirming no pre-authorization was necessary, the fact that the Defendants were benefitted by the provision of such services by the Hospital, an obligation on the part of the Defendants to make restitution to the Hospital arose.

44. The *quantum meruit* rate for the hospital services the Hospital provided to Patient is an amount to be determined at trial. This amount represents the usual, customary, and reasonable costs or

charge for the services rendered by the Hospital. Hospital has submitted statements to Defendants for this amount and has made repeated demands that it be paid.

45. Defendants have refused to pay and continue to refuse to pay Hospital for the whole of the sums originally owed to the Hospital for the hospital services provided to the Patient. Accordingly, there is now due and owing to the Hospital unpaid sums, plus statutory interest thereon.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment as follows:

1. For compensatory damages in an amount to be determined at the time of trial, plus statutory interest;
2. For restitution in an amount to be determined at the time of trial, plus statutory interest;
3. For a declaration the Defendants are obligated to pay the Hospital all monies owed for the hospital services rendered to Patient; and
4. For other such relief as the Court deems just and appropriate.

DATED: October 9, 2020                HELTON LAW GROUP, APC

By: *Megan Eilers*
YVETTE KOHAN
MEGAN EILERS
Attorneys for Plaintiff LOS ALAMITOS MEDICAL CENTER

### DEMAND FOR JURY TRIAL

Plaintiff, LOS ALAMITOS MEDICAL CENTER, hereby demands a jury trial as provided by law.

DATED:  October 9, 2020

HELTON LAW GROUP, APC

By: *Megan Eilers*
YVETTE KOHAN
MEGAN EILERS
Attorneys for Plaintiff LOS ALAMITOS MEDICAL CENTER